IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs December 1, 2009

LAMARIO SUMNER a/k/a LAMARIO FLEMING v.
STATE OF TENNESSEE

Direct Appeal from the Criminal Court for Shelby County
No. 03-07118     Paula Skahan, Judge

No. W2009-00453-CCA-R3-PC  - Filed November 10, 2010

Petitioner, Larmio Sumner a/k/a Lamario Flemming, appeals the post-conviction court's
dismissal of his petition for post-conviction relief in which he alleged the ineffective
assistance of trial counsel.  Specifically, Petitioner contends that trial counsel's assistance
was ineffective because he failed to (1) request a jury instruction on aggravated assault as
a lesser included offense of each count charged in the indictment; and (2) appeal the trial
court's imposition of consecutive sentencing.  After a thorough review, we affirm the
judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the Court, in which JOHN EVERETT
WILLIAMS and J.C. MCLIN, JJ., joined.

Lance R. Chism, Memphis, Tennessee, for the appellant, Lamario Sumner.

Robert E. Cooper, Jr., Attorney General and Reporter; Deshea Dulany Faughn, Assistant
Attorney General; William L. Gibbons, District Attorney General; and Byron B. Winsett,
III, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

I.  Background

Following a jury trial, Petitioner was convicted of two counts of aggravated robbery.
The trial court sentenced Petitioner as a Range III, persistent offender, to twenty years for
each conviction.  The trial court ordered Petitioner to serve his sentences consecutively for
an effective sentence of forty years.

The facts supporting Petitioner's convictions were summarized by this Court on appeal as follows:

On April 26, 2003, the two victims, Maria Lawson and Angel Silva, met at Memphis de Noche, a local Memphis club. After a brief conversation, the two went outside to Lawson's Jeep Cherokee and drove behind the club in order to "have sex." Lawson admitted to prostituting at the club. Lawson was seated in the driver's seat of the vehicle, and Silva was standing outside the passenger door when a car with two black males pulled up behind Lawson's vehicle. The passenger of the vehicle, later identified as the Appellant, exited the car and brandishing a pistol, approached Silva and demanded money. Silva removed his wallet from his pocket and threw it to the ground. As the Appellant bent to retrieve the wallet, Silva fled and hid between two parked cars. The Appellant then approached Lawson's side of the vehicle, demanding that she surrender her keys to the vehicle. Lawson handed the Appellant the keys, but as he attempted to enter the vehicle, she "hollered real loud." At this point, rescue-minded patrons of the bar emerged. The Appellant fled the Jeep Cherokee, taking Lawson's purse with him, and he began firing his gun at the oncoming patrons. One or more of the patrons, who were also armed, returned fire. After the gunfire stopped, Silva emerged from his hiding spot and proceeded back around the building. The Appellant, who was still present at this time, shot Silva in the chest. The Appellant then fled the scene on foot. The driver of the vehicle, who had remained in the vehicle during the commission of the offenses, drove away.

A club security guard escorted Lawson as she moved her vehicle to a more secure location. During the process of moving her vehicle, Lawson found the Appellant's driver license in the floorboard. When the police arrived on the scene, Lawson and the security guard returned to the scene, and Lawson gave the driver license to an officer, identifying the man as the perpetrator.

Silva was transported to a nearby hospital where he underwent surgery for a gunshot wound to the chest. After his discharge, Silva was interviewed by the police through an interpreter, and he identified the Appellant as his assailant from a photo line-up.

*State v. Lamario Sumner*, No. W2005-00122-CCA-R3-CD, 2006 WL 44377, at *1 (Tenn. Crim. App., at Jackson, Jan. 6, 2006), *perm. to appeal denied* (Tenn. May 30, 2006).

## II. Post-Conviction Hearing

Petitioner testified that he retained trial counsel in April 2003. Petitioner said that he met with trial counsel approximately seven or eight times before trial, and trial counsel reviewed the facts of the case with him. Petitioner told trial counsel that he, Fred Richards and Michael Benton were riding down Lamar Avenue on April 26, 2003, at approximately 11:30 p.m. to midnight. The group stopped briefly at one bar and then decided not to go into the establishment. Petitioner got out of the vehicle on Lucy Street and was picked up by Tony Thomas, Courtney Gordon, and Antonio Drive. The four men went to a bar on Elvis Presley Boulevard, arriving at approximately 12:30 a.m. They stayed for a few minutes and then drove to a nightclub at approximately 1:00 a.m. Petitioner noticed that he did not have his driver's license with him. Petitioner said that he received a telephone call from his mother at approximately 2:00 a.m. She told Petitioner that police officers had been to her house looking for Petitioner. The officers told her that Petitioner was armed and dangerous. Petitioner said that his girlfriend, Siobhan Fleming picked him up at the club and they drove to Ms. Fleming's house where Petitioner spent the night.

Petitioner stated that he provided the names and telephone numbers of his friends to his trial counsel. Petitioner acknowledged that he had trouble trying to contact these people but said trial counsel did not do any investigation as to their whereabouts. Petitioner stated that trial counsel did not file a motion to suppress the driver's license found in Ms. Lawson's vehicle. Trial counsel also did not ask for a DNA analysis of the hat Petitioner was allegedly wearing at the time of the commission of the offenses, as Petitioner had requested. Petitioner stated that trial counsel "constantly" urged him to enter a plea of guilty. Petitioner acknowledged that trial counsel negotiated a sentence of "seven point two," but Petitioner said that he wanted to proceed to trial because he did not want to accept any sentence that carried a period of confinement. Petitioner stated that trial counsel did not want to go to trial because Petitioner's family could not afford to pay the attorney's fee for services beyond the plea negotiation stage.

On cross-examination, Petitioner acknowledged that the State extended six offers of settlement, each offer involving less confinement time than the previous. Petitioner also acknowledged that trial counsel explained each offer to him. Petitioner stated that he felt that trial counsel was pressuring him to enter a plea of guilty because he kept bringing different offers of settlement to him. Petitioner said that he was not aware that trial counsel was required to present each offer to him. Petitioner did not recollect trial counsel stating that he could not find any of the alibi witnesses based on the information Petitioner provided. Petitioner acknowledged that he did not try to find the alibi witnesses himself before trial. Petitioner acknowledged that Mr. Silva did not identify him as the perpetrator from a line-up of eight African-American men. Petitioner agreed that trial counsel moved

for a dismissal of the case based on the results of the line-up, which was granted by the General Sessions Court. Petitioner acknowledged that he was arrested again for the charges in the criminal trial court approximately five months later.

Sergeant James Terry Max, with the Memphis Police Department, testified that he interviewed Mr. Silva in the hospital on April 29, 2003. Speaking through an interpreter, Mr. Silva described the perpetrator's vehicle but could only give a general description of the perpetrator himself. Sergeant Max stated that the interview lasted only a short time because Mr. Silva was heavily medicated. The next interview occurred on May 9, 2003. Mr. Silva, through an interpreter, described the perpetrator as an African-American male and gave information concerning the man's height and complexion. Sergeant Max showed Mr. Silva a photographic line-up. After a few minutes, Mr. Silva identified Petitioner as the perpetrator, but Mr. Silva did not display much confidence in his choice. Sergeant Max described Mr. Silva's identification as "tentative." On cross-examination, Sergeant Max stated that Ms. Lawson identified Petitioner as the perpetrator from the photograph on the driver's license that was found in her vehicle.

Trial counsel stated that he did not appeal the imposition of consecutive sentencing because he did not feel that he would prevail on the issue, and he felt that there was more support for the issues he did raise. Trial counsel said that the trial court was very thorough in its findings supporting consecutive sentences and "ruled within the bounds of the law."

Trial counsel said that he did not request a jury instruction on aggravated assault as a lesser included offense of aggravated robbery because the theory of defense was based on identity, not that the charged offense did not occur. Trial counsel also believed that the jury would not have convicted Petitioner of aggravated assault based on the evidence presented concerning the robbery of two persons at gunpoint.

Trial counsel said that Petitioner was consistent in his description of his activities on April 26, 2003. Initially, however, he did not discuss the potential of an alibi with Petitioner because Petitioner was focused only on securing the dismissal of the charges against him. Trial counsel said that the State began settlement negotiations "pretty quickly." When the offer included a sentence of 7.2 years at twenty percent, trial counsel stated that he "began practically begging" Petitioner to accept the offer. Trial counsel was aware that the State had found Ms. Lawson, and that Ms. Lawson would testify at trial.

Trial counsel stated that Petitioner always referred to his alibi witnesses by their nicknames except for Ms. Fleming. Trial counsel asked Petitioner to give him any information that would allow him to locate these people. Petitioner gave trial counsel some telephone numbers in May 2003. Attempts to reach the witnesses by these numbers were

unsuccessful. Trial counsel asked Petitioner to enlist his mother's and Ms. Fleming's assistance in finding the witnesses, but he never heard from them. Trial counsel said that Petitioner never showed any interest in talking about his alibi witnesses, and trial counsel doubted that even if found they would corroborate Petitioner's version of the events. Trial counsel stated that "the State" had a list of the potential alibi witnesses and was also unable to locate any of them.

## III. Standard of Review

To succeed on a challenge of ineffective assistance of counsel, the petitioner bears the burden of establishing the allegations set forth in his petition by clear and convincing evidence. T.C.A. § 40-30-210(f). However, the trial court's application of the law to the facts is reviewed *de novo*, without a presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). A claim that counsel rendered ineffective assistance is a mixed question of fact and law and therefore also subject to *de novo* review. *Id*.; *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999).

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he or she must establish that counsel's performance fell below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). In addition, he or she must show that counsel's ineffective performance actually adversely impacted his defense. *Strickland v. Washington*, 466 U.S. 668, 693, 104 S. Ct. 2052, 2067 (1984). In reviewing counsel's performance, the distortions of hindsight must be avoided, and this Court will not second-guess counsel's decisions regarding trial strategies and tactics. *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). The reviewing court, therefore, should not conclude that a particular act or omission by counsel is unreasonable merely because the strategy was unsuccessful. *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. Rather, counsel's alleged errors should be judged from counsel's perspective at the point of time they were made in light of all the facts and circumstances at that time. *Id*. at 690, 104 S. Ct. at 2066.

A petitioner must satisfy both prongs of the *Strickland* test before he or she may prevail on a claim of ineffective assistance of counsel. *See Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997). That is, a petitioner must not only show that his or her counsel's performance fell below acceptable standards, but that such performance was prejudicial to the petitioner. *Id*. Failure to satisfy either prong will result in the denial of relief. *Id*. Accordingly, this Court need not address one of the components if the petitioner fails to establish the other. *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069.

## IV. Jury Instructions

Petitioner argues that trial counsel's assistance was ineffective because he failed to request in writing a jury instruction on aggravated assault as a lesser included offense of aggravated robbery. Petitioner contends that he was prejudiced by trial counsel's decision to forego such a request because the State did not establish beyond a reasonable doubt that the jury would not have convicted him of aggravated assault had they been extended the opportunity to do so.

We note at the outset that Petitioner, not the State, has the burden of proving that he or she was prejudiced by an alleged deficiency on the part of trial or appellate counsel. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052. To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*, 466 U.S. at 694.

A defendant is required to request in writing that the trial court instruct the jury on any specifically identified lesser included offense. T.C.A. § 40-18-110(a). In the absence of such a request, the trial court may charge the identified lesser included offense, but the defendant is not entitled to the charge. *Id*. § 40-18-110 (b). Aggravated assault is a lesser included offense of aggravated robbery. *State v. Swift*, 308 S.W.3d 827, 831-32 (Tenn. 2010); *State v. Franklin*, 130 S.W.3d 789, 798 (Tenn. Crim. App. 2003); *State v. James Carlos Ward*, No. M2009-00417-CCA-R3-CD, 2010 WL 1949155, at *9 (Tenn. Crim. App., at Nashville, May 14, 2010); *State v. Joseph Wayne Graves*, No. W2007-02552-CCA-R3-CD, 2009 WL 3273959, at *10 (Tenn. Crim. App., at Jackson, Oct. 13, 2010), *perm. to appeal denied* (Tenn. Apr. 15, 2010).

In the case *sub judice*, Petitioner was indicted for especially aggravated robbery in one count and convicted of the lesser included offense of aggravated robbery. In another count, Petitioner was charged with and convicted of aggravated robbery. We note that the jury considered the lesser-included offenses of aggravated robbery and robbery in one count, and robbery in the other count, and convicted Petitioner of aggravated robbery in each count, to the exclusion of the immediate lesser included offense of robbery. Harmless error may be shown where the jury convicts on the higher offense to the exclusion of the immediately lesser offense, necessarily rejecting other lesser offenses. *State v. Williams*, 977 S.W.2d 101, 106 (Tenn. 1998). For this reason, we conclude that Petitioner was not prejudiced by his trial counsel's failure to request an instruction on the lesser included offense of aggravated assault.

Notwithstanding the jury's rejection of an intermediate lesser offense, we also conclude that the error is harmless in that it appears beyond a reasonable doubt that the error

did not affect the outcome of the trial." *See State v. Allen*, 69 S.W.3d 181, 191 (Tenn. 2002). As Petitioner candidly acknowledges in his brief, failure to instruct the jury on aggravated assault as a lesser included offense is harmless error "when the proof overwhelmingly showed that a theft occurred." *See State v. Banks*, 271 S.W.3d 90, 129-30 (Tenn. 2008) (noting that the only variation between aggravated robbery and aggravated assault is the robbery component); *see also State v. Henry Hawkins*, No. W2005-00781-CCA-R3-CD, 2006 WL 1703817, at *16 (Tenn. Crim. App., at Jackson, June 21, 2006), *perm. to app. denied* (Tenn. Oct. 30, 2006) (concluding that "no rational juror could have found the defendant committed an assault or aggravated assault without committing a robbery or an aggravated robbery and, therefore, the trial court's failure to charge aggravated assault as a lesser included offense is harmless error). Ms. Lawson testified at trial that Petitioner was armed with two guns. He pointed one gun at her head when he demanded her car keys and kept the other gun by his side. Ms. Lawson said that when the other bar patrons rushed into the parking lot in response to her screams, Petitioner ran off with her purse. Mr. Silva testified that Petitioner approached him, pointed a gun at him, and demanded money. Mr. Silva said that he threw his wallet on the ground in front of Petitioner and then ran away.

Petitioner acknowledges that "the proof clearly showed that he committed a theft against both Angel Silva and Maria Lawson." Trial counsel testified at the post-conviction hearing that he did not request an instruction on aggravated assault because Petitioner did not deny that the offenses occurred, just that he was not the perpetrator. Petitioner does not offer any reason why his case is distinguishable from the situations presented in *Banks* and *Henry Hawkins*. Based on the foregoing, we conclude that Petitioner has failed to show that he was prejudiced by trial counsel's failure to request a jury instruction on aggravated assault. Petitioner is not entitled to relief on this issue.

## V. Sentencing Issues

Petitioner argues that trial counsel's assistance was ineffective because he failed to appeal the trial court's imposition of consecutive sentencing. Petitioner submits that an effective sentence of forty years was "greater than that deserved for the offense committed" and not "justly deserved." *See* T.C.A. § 40-35-102(1), -103(2). Petitioner points out that he was acquitted of especially aggravated robbery regarding the offense against Mr. Silva, the jury having concluded he did not cause any serious bodily injury. He also argues that his prior criminal record consists primarily of juvenile offenses, and the current crimes were committed "in a short period of time as part of one episode." Petitioner also argues that no one was injured during the commission of the prior offenses for which he had been convicted.

-7-

A criminal defendant has a constitutional right to counsel on his first appeal, and this right necessarily includes the right to effective assistance of counsel. *House v. State*, 911 S.W.2d 705, 712 (Tenn. 1995) (citing *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814 (1963); *Cooper v. State*, 849 S.W.2d 744, 746 (Tenn. 1993)). The same principles applicable to deciding the effectiveness of trial counsel apply to appellate counsel. *House*, 911 S.W.2d at 712. Thus, Petitioner's appellate counsel must not only have been ineffective in his performance, Petitioner must also have been prejudiced by appellate counsel's deficient conduct. *Strickland*, 466 U.S. at 693. To demonstrate he was prejudiced by appellate counsel's actions, Petitioner must show that there is a reasonable probability that the result on appeal would have been different but for the errors of counsel. *Id*. at 694.

The trial court sentenced Petitioner as a Range III, persistent offender, based on Petitioner's conviction in November 2000 of two counts of especially aggravated kidnapping and one count of especially aggravated robbery, all Class B felonies, in November 2000. *See* T.C.A. § 40-35-107(2). According to the presentence report, Petitioner was sixteen years old when these offenses were committed in July 1998, and he was transferred to the Shelby County Criminal Court to be tried as an adult. In addition, if a defendant is convicted of one or more criminal offense, consecutive sentencing may be imposed at the discretion of the trial court if one or more of the criteria in Tennessee Code Annotated section 40-35-115(b) is present. In this instance, the trial court found that Petitioner had an extensive history of criminal activity, and that he was a dangerous offender whose behavior indicated little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high. T.C.A. § 40-35-115(b)(2), (4).

In addition to his three convictions in 2000, Petitioner has the following juvenile adjudications: unlawful possession of a weapon, driving while license suspended, refusal to submit to a blood alcohol test, and reckless driving in 1998; burglary of an automobile, theft of an automobile and possession of cocaine with intent to sell in 1996; aggravated assault, coercion of a witness, robbery, evading arrest, and two adjudications for theft of a vehicle in 1995. In addition, Petitioner's pre-sentence report indicates that he dropped out of school in the ninth grade and has no history of employment.

In determining that Petitioner was a dangerous offender, the trial court found that the circumstances surrounding the commission of the offenses were aggravated noting that not only did Petitioner rob two people at gun point, he discharged his weapon in a crowded parking lot. The trial court also considered the circumstances of Petitioner's prior offenses. At the sentencing hearing on his aggravated robbery convictions, Dana Santos, the victim of one of the especially aggravated kidnapping offenses, testified that she and her friend, Jessica Neighbors, were stopped at a red light when Petitioner got into the back passenger seat. Petitioner ordered Ms. Neighbors to "take him where he needed to go or he was going

to hurt us." Ms. Neighbors crossed the Mississippi state line and Petitioner directed her to an abandoned apartment building. Petitioner told Ms. Neighbors to turn the headlights off. Petitioner held a gun to Ms. Neighbors' temple, and told the women to get out of the vehicle. The women complied, and Ms. Santos stated that she and Ms. Neighbors ran behind a tree because they were afraid that Petitioner was going to shoot them. Ms. Santos identified Petitioner as her assailant at the sentencing hearing.

Based on these factors, the trial court found that confinement for an extended period was necessary to protect society from Petitioner's unwillingness to lead a productive life. The trial court observed that it was apparent that "all this [petitioner] wants to do is put guns on people and terrorize the community and be a big man with a gun." The trial court found that imposition of the minimum sentence for each aggravated robbery conviction and the order of consecutive sentencing was reasonably related to the seriousness of the offenses.

Trial counsel testified at the post-conviction hearing that he reviewed the motion for new trial and chose those issues which he believed had a chance of success on the merits. Trial counsel said, however, that he believed that Petitioner met the criteria for consecutive sentencing and that the trial court properly considered the principles of sentencing in ordering Petitioner to serve his sentences consecutively. There is no requirement that counsel raise a non-frivolous issue on appeal if, as a matter of professional judgment, counsel feels the issue should not be addressed. *See Carpenter v. State*, 126 S.W.3d 879, 887 (Tenn. 2004). Based on our review, we conclude that the evidence does not preponderate against the post-conviction court's finding that trial court's assistance in this regard was not deficient.

Moreover, we conclude that Petitioner has failed to show that there is a reasonable probability that the outcome of the appeal would have been different had trial counsel raised the issue of consecutive sentencing on appeal. Petitioner's history of criminal activity supports the trial court's finding that Petitioner has an extensive criminal record. This Court has repeatedly approved the consideration of a defendant's history of juvenile adjudications in determining whether a defendant has an extensive record of criminal activity for consecutive sentencing purposes. *See State v. Gann*, 251 S.W.3d 446, 465 (Tenn. Crim. App. 2007); *State v. Mickens*, 123 S.W.3d 355, 396 (Tenn. Crim. App. 2003); *State v. Andre Perkins*, No. W2007-02774-CCA-R3-CD, 2009 WL 1741400, at *9 (Tenn. Crim. App., at Jackson, June 17, 2009), *no perm. to appeal filed; State v. Robert Donterious Connor*, No. M2007-01619-CCA-R3-CD, 2008 WL 4614449, at *14 (Tenn. Crim. App., at Nashville, Oct. 17, 2008), *perm. to appeal denied* (Tenn. July 27, 2009). The record also supports the trial court's finding that Petitioner is a dangerous offender, and that the trial court considered all of the principles of sentencing. Petitioner is not entitled to relief on this issue.

**CONCLUSION**

After a thorough review, we affirm the judgment of the post-conviction court.

_____
THOMAS T. WOODALL, JUDGE